IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:10-CV-129-F

| | |
|---|---|
| FELICITY V. LITTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| STOCK BUILDING SUPPLY, LLC; ) | |
| STOCK BUILDING SUPPLY HOLDINGS, ) | |
| LLC; COOK AND BOARDMAN, INC.; ) | |
| THE COOK AND BOARDMAN GROUP, ) | |
| LLC; SBS COMMERCIAL DOOR AND ) | |
| HARDWARE, LLC; and SBS/MARTIN ) | |
| ARCHITECTURAL PRODUCTS, LLC, ) | |
| ) | |
| Defendants. ) | |

This employment discrimination case comes before the court, in part, on the motions to dismiss by defendants SBS Commercial Door and Hardware, LLC ("Commercial") (D.E. 19) and Cook and Boardman, Inc. and The Cook and Boardman Group, LLC (collectively "the Cook defendants") (D.E. 22). Both motions ("the dismissal motions") seek dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).[1] Plaintiff Felicity V. Little ("plaintiff") opposes the motions. The motions have been fully briefed,[2] and were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 22 Dec. 2010 Order (D.E. 31)).

---

[1] References to specific rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

[2] In support of their motions, Commercial and the Cook defendants filed memoranda (D.E. 20, 23, respectively). Plaintiff filed memoranda in opposition (D.E. 27, 28, respectively), and Commercial and the Cook defendants filed replies (D.E. 30, 29, respectively).

Also before the court is the joint motion (D.E. 32) by all defendants in this action to suspend the deadlines set in the Order for Discovery Plan (D.E. 26) until after disposition of the dismissal motions. Plaintiff filed a response in opposition (D.E. 33), and defendants filed a reply (D.E. 34). The motion was referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* 4 Jan. 2011 entry following D.E. 33).

For the reasons set forth below, it will be recommended that the dismissal motions be denied. Defendants' joint motion to suspend discovery-related deadlines will be denied as moot.

## BACKGROUND

### I. CASE HISTORY

On 11 August 2010, plaintiff filed this action in the Superior Court Division of the North Carolina General Court of Justice for Wake County (*see* Compl. (D.E. 1-1 at pp. 3-10)). On 15 September 2010, the case was removed to this court, which was alleged to have federal question jurisdiction pursuant to 28 U.S.C. § 1331. (*See* Removal Notice (D.E. 1) 1). By order (D.E. 13) on joint motion of the parties (D.E. 12), plaintiff filed an Amended Complaint (D.E. 14) on 25 October 2010. Commercial and the Cook defendants filed their respective dismissal motions in response to the Amended Complaint. The remaining defendants filed answers denying wrongdoing. (*See* D.E. 17, 24).

### II. PLAINTIFF'S CLAIMS

In her Amended Complaint, plaintiff alleges that she was employed as an Assistant Project Manager for Martin Architectural, a subcontractor for commercial building construction, from August 2007 to July 2009. (Am. Compl. ¶ 2). Defendants, the alleged owners and operators of that business, purportedly terminated her employment unlawfully on

2

27 July 2009, the day that she was scheduled to return to work after being on approved leave under the Federal Medical Leave Act ("FMLA") following the birth of her child. (*Id.* ¶¶ 24-28). Plaintiff further alleges that she was more experienced than three male employees working in the same position (*id.* ¶ 30); that her performance was superior to that of these other workers (*id.*); and that she was told she was being terminated "because she had been out on leave and because she might need to go out on leave again in the future" (*id.* ¶ 32). Plaintiff asserts, therefore, that her termination was unlawfully based on her sex, on her recent pregnancy and childbirth, and on the possibility of future pregnancies that would result in leave. (*Id.* ¶ 33).

Plaintiff also alleges that she timely filed written charges with the Equal Employment Opportunity Commission ("EEOC"), received a notice of right-to-sue from the EEOC, and timely filed this action after receipt of the notice of right to sue. (*Id.* ¶ 39). Plaintiff's EEOC charge lists "Stock Building Supply" as her employer. (*See* Commercial's Mot. Ex. A (D.E. 19-1) at 2; Cook Defs.' Mot. Ex. A (D.E. 22-1) at 2).

Plaintiff asserts three causes of action: a claim for wrongful discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII") (*id.* ¶¶ 35-41); a claim for wrongful discharge and other violations under the FMLA, 29 U.S.C. § 2601 *et seq.* (*id.* ¶¶ 48-55); and a claim for wrongful discharge in violation of North Carolina public policy as stated in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et seq.* (*id.* ¶¶ 42-47). She seeks a declaratory judgment, compensatory damages, liquidated and punitive damages, attorneys' fees, and other relief. (*Id.* 8).

### III. DEFENDANTS

During the period from 2006 until April 2010, including the alleged date of plaintiff's discharge, the purported owners and operators of Martin Architectural were defendant

SBS/Martin Architectural Products, LLC and a trio of defendant entities that included movant Commercial. (*Id.* ¶¶ 9, 14). The other two entities in this trio are Stock Building Supply Holdings, LLC and Stock Building Supply, LLC. (*Id.* ¶ 9). This trio is referred to in the Amended Complaint and herein as "Stock Building." Plaintiff alleges that, as the owners and operators of Martin Architectural while she was employed there, Stock Building, including movant Commercial, and SBS/Martin Architectural Products, LLC were her employers. (*See id.* ¶¶ 2, 14, 17).

In April 2010, there was allegedly an ownership change in Martin Architectural, as well as SBS/Martin Architectural Products, LLC. They were both allegedly sold, by Stock Building, to the movant Cook defendants. (*Id.* ¶¶ 12, 15). Thus, the current alleged owners and operators of Martin Architectural are the Cook defendants and SBS/Martin Architectural Products, LLC. (*Id.* ¶ 16). Plaintiff further alleges that the Cook defendants are liable as employers because they "are successors in interest of the ongoing Martin Architectural business, [and] are conducting the Martin Architectural business in substantially the same manner as Stock Building." (*Id.* ¶ 18).

Plaintiff makes allegations regarding the relationship among the various defendant entities. Stock Building Supply Holdings, LLC is allegedly the parent of the other entities comprising Stock Building; that is, movant Commercial and Stock Building Supply, LLC are allegedly wholly owned subsidiaries of, fully controlled and managed by, and mere instrumentalities of Stock Building Supply Holdings, LLC. (*Id.* ¶¶ 7, 8). From 2009 until April 2010, Stock Building Supply Holdings, LLC allegedly bore the same relationship to SBS/Martin Architectural Products, LLC. (*Id.* ¶ 13). As to the movant Cook defendants, Cook

and Boardman, Inc. is allegedly a wholly owned subsidiary of, fully controlled and managed by, and a mere instrumentality of The Cook and Boardman Group, LLC. (*Id*. ¶ 12).

## IV. COMMERCIAL'S AND THE COOK DEFENDANTS' MOTIONS

Commercial and the Cook defendants seek dismissal on substantially the same grounds. They contend that: (1) the Title VII claims against them should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because plaintiff has failed to adequately exhaust her administrative remedies by not specifically naming them as her employer in her EEOC charge and (2) all the claims against them should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because plaintiff has not adequately alleged that they were her employer. The court will turn first to defendants' challenge under Rule 12(b)(1) and then their challenge under Rule 12(b)(6).

### DEFENDANTS' RULE 12(b)(1) CHALLENGE

## I. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(1) Standard of Review

Rule 12(b)(1) provides for dismissal of an action if the court lacks subject matter jurisdiction over it. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of showing federal jurisdiction on a Rule 12(b)(1) motion. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Bio-Medical Applications of N.C., Inc. v. Elec. Data Sys. Corp.*, 412 F. Supp. 2d 549, 551 (E.D.N.C. 2006). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (non-conversion of motion). The court must grant the motion "only if the material

5

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768; *see also E.E.O.C. v. AMX Communications, Ltd.*, Civ. No. WDQ-09-2483, 2011 WL 3555831, at *3 (D. Md. 8 Aug. 2011).

### B. Title VII Exhaustion of Administrative Remedies and Naming Requirements

To bring a federal suit under Title VII, a plaintiff must first exhaust the administrative procedures set forth in 42 U.S.C. § 2000e-5(b). *See Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 136-37 (4th Cir. 1995). A plaintiff's failure to allege facts showing that the administrative prerequisites have been met or to attach an EEOC right-to-sue letter to the complaint subjects it to dismissal for lack of subject matter jurisdiction. *See id.* ("We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint.").

"Under Title VII . . . , a civil action may be brought only 'against the respondent named in the charge.'" *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) (quoting 42 U.S.C. § 2000e-5(f)(1)). "The naming requirement serves two purposes, and is not a mere technicality: 'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'" *Alvarado v. Bd of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)).

However, courts have also recognized that "Title VII does not require procedural exactness from lay complainants." *Id.* at 460. After noting that the goals of the naming requirement had not been thwarted, the Fourth Circuit in *Alvarado* held that the plaintiff's Title VII suit could proceed against the board of trustees of the college where he worked, the suable

entity under state law, even though he had named the college itself as his employer in his EEOC charge. *Id*. The court concluded that "the board of trustees is identical with the college," *id*. at 461, and that "[i]t is not reasonable to have expected [plaintiff] to know that Maryland statutes provide that the board of trustees of the college is the appropriate entity to 'sue and be sued,'" *id*. at 460.

In addition, courts have applied the so-called "substantial identity exception" to the naming requirement when a defendant in a Title VII suit not named in the EEOC charge is substantially identical–not necessarily actually identical as in *Alvarado*–to an entity that was named. *See, e.g., Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *5 (D. Md. 6 Aug. 2010). Although the Fourth Circuit has not had occasion to adopt this exception, it has commented on it favorably and district courts in this circuit have applied it. *See Alvarado*, 848 F.2d at 461 (acknowledging the adoption of the substantial identity exception by other circuits and noting that, while the Fourth Circuit has not had the opportunity to adopt the exception, it had in dictum in *EEOC v. American National Bank*, 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981) quoted with approval the exception as expressed in *Chastang v. Flynn & Emrich Co.*, 365 F. Supp. 957 (D. Md. 1973)). Under this exception, courts consider four factors:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) Whether, under the circumstances, the interest of the named party are so similar to the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and

7

>(4) Whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Fontell*, 2010 WL 3086498, at *5. The second and third factors have been held the most important because they are most reflective of the two-fold purpose of the naming requirement. *Id*.

Another exception to the naming requirement has been recognized for successors in interest to those who have engaged in the alleged discrimination. "When liability is based on successor liability and not on personal involvement in Title VII violations, there is no need for the plaintiff to name all defendants in the EEOC charge." *Braswell v. Great Expectations of Washington, Inc.*, No. 5:97-CV-41-BRL, 1997 WL 1134125, at *2 (E.D.N.C. 5 Aug. 1997); *see also Williams v. Greendolf*, 735 F. Supp. 137 (S.D.N.Y. 1990) (holding that the court was not deprived of jurisdiction where plaintiff failed to name individual corporate officers in EEOC charge based on successor liability).

## II. ANALYSIS

### A. Commercial's Motion

As indicated, Commercial contends that because the EEOC charge does not specifically name it, plaintiff has not exhausted her administrative remedies as to it and the court therefore does not have subject matter jurisdiction over her Title VII claims against it. The court disagrees.

There is a threshold question whether Commercial is included in "Stock Building Supply" as used in the EEOC charge. The full name of Commercial is SBS Commercial Door and Hardware, LLC. The "SBS" in its name is presumably an abbreviation for Stock Building Supply. To the extent that "Stock Building Supply" is interpreted to encompass entities with

that name or some variation of it, Commercial would be included and its jurisdictional challenge would fail.

But even assuming Commercial is not named in the EEOC charge, application of the factors in the substantial identity test shows that Commercial's motion fails. In satisfaction of the second factor, the interests of the defendants that are arguably named in the EEOC charge are so similar to Commercial's, based on plaintiff's allegations, to have rendered Commercial's inclusion in the EEOC proceedings unnecessary (again, to the extent it was not included).

For example, Stock Building Supply Holdings, LLC is plausibly deemed to have been named in the EEOC charge because "Stock Building Supply" is the principal element of its name. "Holdings, LLC" constitutes corporate designations with which a lay complainant like plaintiff would likely not be familiar. Plaintiff expressly alleges that Stock Building Supply Holdings, LLC's interests include those of Commercial: "[Commercial] is a wholly-owned subsidiary of Stock Building Supply Holdings, LLC, is fully controlled and managed by Stock Building Supply Holdings, LLC, and is a mere instrumentality of Stock Building Supply Holdings, LLC. (Am. Compl. ¶ 8). Moreover, both Stock Building Supply Holdings, LLC and Commercial are alleged to have been owners and operators of Martin Architectural when plaintiff was terminated from her employment there.

Stock Building Supply, LLC can also appropriately be deemed encompassed by the EEOC charge for the same reasons discussed and is another alleged owner and operator of Martin Architectural. It, too, therefore appears to have interests sufficiently similar to Commercial's with respect to plaintiff's allegations of employment discrimination to have rendered Commercial's inclusion in the EEOC proceedings unnecessary, at least in

9

combination with the inclusion of Stock Building Supply Holdings, LLC and other related defendants.

The record is essentially silent with respect to the other factors of the substantial identity test. Therefore, at this early stage of this case, the largely undeveloped record shows that the court has subject matter jurisdiction over the Title VII claim against Commercial. The portion of Commercial's dismissal motion based on Rule 12(b)(1) should accordingly be denied.

### B. The Cook Defendants' Motion

Like Commercial, the Cook defendants contend that the court lacks subject matter jurisdiction over them because they were not named in the EEOC charge. Again, the court disagrees.

The Cook defendants appear to fall squarely within the successor exception to the naming requirement based on the allegations of the Amended Complaint. Plaintiff expressly alleges that the Cook defendants purchased Martin Architectural in April 2010. (Am. Compl. ¶ 15). Plaintiff also expressly alleges that the Cook defendants "are successors in interest of the ongoing Martin Architectural business, are conducting the Martin Architectural business in substantially the same manner as Stock Building, and are therefore liable as employers under Title VII." (*Id*. ¶ 18). Because plaintiff's allegations place the Cook defendants within the scope of the successor in interest exception, the record at this early stage shows the court to have subject matter jurisdiction over the Title VII claim against them. The portion of their dismissal motion under Rule 12(b)(1) should accordingly be denied.

10

# DEFENDANTS' RULE 12(b)(6) CHALLENGE

## I. APPLICABLE LEGAL PRINCIPLES

### A. Rule 12(b)(6) Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id*.

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*,

11

407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 129 S. Ct. at 1951.

### B. Status as Employer

For the purposes of Title VII, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C § 2000e(b). The FMLA similarly defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," 29 U.S.C. § 2611(4)(A)(i), and includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(ii)(I). Each of these laws defines the term "employee" as an "individual employed by an employer." 42 U.S.C § 2000e(f); 29 U.S.C. § 2611(3) (incorporating the definition at 29 U.S.C. § 203(e)(1)). The North Carolina Equal Employment Practices Act, which declares the policy of the State of North Carolina to protect employees from discrimination in employment, applies by its express terms to "employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2; *see also Jarman v. Deason*, 173 N.C. App. 297, 299, 618 S.E.2d 776, 778 (2005) (noting that by enacting N.C. Gen. Stat. § 143-422.2 "[o]ur legislature has specifically prohibited employment discrimination on certain

enumerated bases by employers of fifteen or more people and deemed such discrimination to be contrary to the interests of the public").

When faced with the issue, as presented in the instant case, of whether multiple entities should be deemed a single employer for the purposes of federal civil rights lawsuits such as Title VII and FMLA, courts have applied the "integrated employer" test. This test entails consideration of the following non-exclusive factors: "(1) the interrelation of operations[,] (2) centralized control of labor relations[,] (3) common management[,] and (4) common ownership or financial control." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 n* (4th Cir. 1987) (applying the test in an ADEA case); *see also Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) (applying the test in a Title VII case); *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) (applying the test in an FMLA case).

Successors in interest to employers that have engaged in discrimination may be found liable for the discrimination. Cases under Title VII have so held. *See, e.g., Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221, 224-25 (10th Cir. 1982); *see also Braswell v. Great Expectations of Washington, Inc.*, No. 5:97-CV-41-BR1, 1997 WL 1134125, *4 (E.D.N.C. 5 Aug. 1997) (reviewing cases that have applied successor liability in Title VII cases).

The FMLA expressly extends liability to successors by defining "employer" to include "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II). The applicable FMLA regulations set forth the following eight factors to be considered in determining whether an entity qualifies as a successor in interest:

(1) Substantial continuity of the same business operations;
(2) Use of the same plant;
(3) Continuity of the work force;

  (4) Similarity of jobs and working conditions;
  (5) Similarity of supervisory personnel;
  (6) Similarity in machinery, equipment, and production methods;
  (7) Similarity of products or services; and
  (8) The ability of the predecessor to provide relief.

29 C.F.R. § 825.107(a). These regulations further provide that "[a] determination of whether or not a 'successor in interest' exists is not determined by the application of any single criterion, but rather the entire circumstances are to be viewed in their totality." 29 C.F.R. § 825.107(b).

  The parties have not cited to, nor has the court found, any North Carolina cases in which the integrated employer test or principles of successor liability have been applied to determine a defendant's status as an employer in the context of a wrongful discharge claim in violation of North Carolina public policy as stated in the North Carolina Equal Employment Practices Act, specifically N.C. Gen. Stat. § 143-422.2. But it is reasonable to believe that the North Carolina courts would look to the foregoing principles developed by the federal courts in determining whether multiple entities or successors in interest qualify as employers because they have previously looked to federal case law in interpreting this same provision of the North Carolina Equal Employment Practices Act. *See Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 686, 504 S.E.2d 580, 584 (1998) ("In analyzing state claims [under N.C. Gen. Stat. § 143-422.2], [the North Carolina] Supreme Court has adopted the evidentiary standards and principles developed under Title VII.") (citing *North Carolina Department of Correction v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983)); *Walker v. Town of Stoneville*, – N.C. App. –, 712 S.E.2d 239, 248 (2011) (adopting the "payroll method" federal courts use to determine whether an employer meets the numerosity requirement of Title VII (*i.e.*, having 15 or more employees) as the method for determining the same requirement under N.C. Gen. Stat. § 143-422.2); *see also Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706, 713

(1989) ("Decisions under the federal [civil] rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina [civil] rules.").

## II. ANALYSIS

### A. Commercial's Motion

Commercial argues that plaintiff's allegations that Commercial was her employer are impermissibly conclusory and that the Amended Complaint therefore fails to state a claim against it. The court disagrees.

Plaintiff does allege conclusorily that she was an employee of "Defendants," which term includes Commercial (Am. Compl. ¶ 2), and that "Defendants" were her employers (*id.* ¶ 17). She goes on, however, to allege more particularly that Commercial, along with other defendants, owned and operated Martin Architectural from 2006 until April 2010, encompassing the date of her alleged discharge on 27 July 2009. (*Id.* ¶¶ 9, 14, 29). She also alleges that Commercial is "a wholly-owned subsidiary of Stock Building Supply Holdings, LLC, is fully controlled and managed by Stock Building Supply Holdings, ILLC, and is a mere instrumentality of Stock Building Supply Holdings, LLC." (*Id.* ¶ 8). She makes additional allegations bearing on the relationship among Commercial and other defendant entities. (*See, e.g., id.* ¶¶ 7, 13). The court finds that plaintiffs' allegations are sufficient to survive Commercial's dismissal motion.

To be able to plead more expansively that Commercial qualified as plaintiff's employer pursuant to the integrated employer test would require substantial information about the specific circumstances bearing on the relationship among Commercial, its related entities, and Martin Architectural. Much of the required information would necessarily be in the possession of one or more of the defendants and not readily accessible to plaintiff without the aid of

discovery. It would be manifestly unjust to require plaintiff to plead facts to which she does not appear to have adequate access at this point. Accordingly, it will be recommended that the portion of Commercial's motion to dismiss based on Rule 12(b)(6) be denied. *See Ayala v. Metro One Sec. Systems, Inc.*, No. 11-CV-233 (JG) (ALC), 2011 WL 1486559, at *6 (E.D.N.Y. 19 Apr. 2011) ("Whether two related entities are sufficiently integrated to be treated as a single employer [for the purpose of Title VII] is generally a question of fact" and, therefore, "is generally not suited to resolution on a motion to dismiss."); *see also Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358, 365 (2d Cir. 2000) ("[U]ltimate failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state claim.").

### B. The Cook Defendants' Motion

The Cook defendants contend that plaintiff's allegation that they purchased Martin Architectural, along with SBS/Martin Architectural Products, LLC, after her alleged termination demonstrates that they cannot be held liable as plaintiff's employer. Again, the court disagrees.

As noted previously, plaintiff alleges specifically that the Cook defendants "are successors in interest of the ongoing Martin Architectural business, [and] are conducting the Martin Architectural business in substantially the same manner as Stock Building" and are liable on that basis. (Am. Compl. ¶ 18). As with application of the substantial identity test, to be able to plead more expansively that the Cook defendants are liable as successors in interest would require substantial information in the possession of the Cook defendants to which plaintiff does not appear to have adequate access at this point without recourse to discovery. In particular, her alleged discharge before the Cook defendants acquired Martin Architectural

would appear necessarily to impede her knowledge of the many factors bearing on the degree to which the Cook defendants have operated the business in the same fashion as their predecessors.

The court therefore finds plaintiff's allegations relating to the Cook defendants' liability as successors to be sufficient to survive their Rule 12(b)(6) motion. It will accordingly be recommended that the portion of the Cook defendants' motion to dismiss based on Rule 12(b)(6) also be denied. Thus, it will be recommended that both dismissal motions be denied in their entirety.

### DEFENDANTS' JOINT MOTION TO SUSPEND DISCOVERY-RELATED DEADLINES

The Order for Discovery Plan set a deadline for the parties' mandatory meeting under Rule 26(f) and related deadlines. The defendants' joint motion seeks suspension of the various deadlines until 30 days after entry of the order disposing of the dismissal motions. The court assumes that the parties have not acted on the deadlines pending ruling on the motion to suspend. The motion will therefore be denied as moot. In addition, the deadline for the Rule 26(f) conference will be changed to 14 days after entry of the order on the dismissal motions and the parties will be directed to comply with the Order for Discovery Plan based on this modified deadline.

### CONCLUSION

For the foregoing reasons:

IT IS RECOMMENDED that the motions (D.E. 19, 22) to dismiss by Commercial and the Cook defendants be DENIED.

IT IS ORDERED that:

1. defendants' joint motion (D.E. 32) to stay discovery is DENIED AS MOOT; and

2. the parties shall conduct their mandatory Rule 26(f) meeting no later than 14 days after entry of the order disposing of the dismissal motions, shall file a discovery plan within 14 days after the meeting, and shall otherwise comply with the terms of the Order for Discovery Plan based on this modified deadline for the Rule 26(f) meeting.

IT IS FURTHER ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 12 September 2011 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections is due no later than 7 days from service of the objections or 19 September 2011, whichever is earlier.

This, the 2nd day of September 2011.

_____
James E. Gates
United States Magistrate Judge